IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SANDRA K. SCHMID,

        Plaintiff,

v.                                          CIV. 04-1422 LAM

JO ANNE B. BARNHART,
Commissioner, Social Security Administration,

        Defendant.

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse Administrative Decision or, in the Alternative, a Remand of Said Decision* (*Doc. 7*).  In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case.  The Court has reviewed Plaintiff's motion and her memorandum in support of the motion (*Doc. 8*), Defendant's response to the motion (*Doc. 9*), Plaintiff's reply to the response (*Doc. 12*), the pleadings filed in this case and relevant law.  Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*").  For the reasons set forth below, the Court **FINDS** that the decision of the Commissioner of Social Security (hereinafter, "Commissioner") should be **AFFIRMED** and Plaintiff's motion should be **DENIED**.

## I.  Procedural History

On October 13, 2002, Plaintiff, Sandra K. Schmid, applied for disability insurance benefits. (*R. at 41-43.*)  In connection with her application, she alleged a disability since August 1, 1998.

(*R. at 41.*)  In connection with her application, she alleged a disability due to fibromyalgia, panic attacks, depression, osteoarthritis and chronic fatigue.  (*R. at 60.*)  Plaintiff's application was denied at the initial and reconsideration levels. (*R. at 26, 27.*)

An administrative law judge (hereinafter "ALJ") conducted a hearing on June 10, 2004. (*R. at 183-199.*)  Plaintiff was present and testified at the hearing. (*R. at 183, 187-198.*)  Plaintiff was represented by counsel at the hearing.  (*R. at 183, 185.*)  On July 30, 2004, the ALJ issued his decision in which he found that Plaintiff was not disabled at step four of the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520.  (*R. at 20.*)  The ALJ made the following findings, *inter alia*, with regard to Plaintiff: (1) she met the non-disability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through the date of his decision; (2) she had not engaged in substantial gainful activity since the alleged onset of disability; (3) pursuant to the requirements of the Social Security regulations, she had a "severe" impairment of fibromyalgia[1] and she also had dysthemic and somatoform disorders[2] which were not severe; (4) her fibromyalgia did not meet or medically equal one of the listed impairments in Appendix 1 to Subpart P of Part 404; (5) her allegations regarding her limitations were not totally credible for the reasons set forth in the decision; (6) she had the

---

[1]Under relevant Social Security regulations, an impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities.  *See*  20 C.F.R. § 404.1520(c).

[2]"The essential feature of Dysthemic Disorder is a chronically depressed mood that occurs for most of the day more days than not for at least 2 years."  American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision, 2000, at 376. "The common feature of the Somatoform Disorders is the presence of physical symptoms that suggest a general medical condition . . . and are not fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder . . . ."  *Id.* at 485.

residual functional capacity (hereinafter "RFC") to perform the full range of light work activity;[3] (7) her past relevant work as a secretary did not require the performance of work-related activities precluded by her RFC; (8) her fibromyalgia did not prevent her from performing her past relevant work; and (9) she was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. (*R. at 19-20.*)

After the ALJ issued his decision, Plaintiff filed a request for review. (*R. at 11.*) On October 27, 2004, the Appeals Council issued its decision denying her request, making the ALJ's decision the final decision of the Commissioner in her case. (*R. at 6-10.*) On December 23, 2004, Plaintiff filed her complaint in this action. *See **Complaint for Review of Administrative Decision** (Doc. 1.)*

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *See, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004);

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). This Court's assessment is based on a meticulous review of the entire record, where the Court can neither re-weigh the evidence nor substitute its judgment for that of the agency. *See Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214.

For purposes of disability insurance benefits, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A five-step sequential evaluation process has been established for evaluating a disability claim. *See Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment; that he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; and that either his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Pt. 404, Subpt. P, App. 1,[4] or that he is unable

---

[4]If a claimant can show that his impairment meets or equals a listed impairment, and also meets the duration requirement in 20 C.F.R. § 404.1509 (requiring that an impairment have lasted or be expected to last for a continuous period of at least twelve months), he will be found disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 1520(d).

to perform work that he has done in the past.  *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988).  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his RFC, age, education, and work experience.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

### III.  Plaintiff's Age, Education, Work Experience and Medical History

Plaintiff was forty-nine years old on the date of the hearing.  (*R. at 15, 41, 183.*)  She completed high school and also attended business college.  (*R. at 66.*)  Plaintiff has past work experience as a secretary and bookkeeper, home health aide and convenience store manager. (*R. at 61, 187-189.*)  She also has past work experience, occurring after the alleged onset date of disability, as a hay baler (*R. at 61, 187-189*); however, the ALJ found that her earnings from hay baling did not qualify that work as substantial, gainful activity.  (*R. at 16.*)  Plaintiff's medical records document treatment by physician Daniel Raes, M.D., during the period from May, 19, 1998, to November 5, 2001;[5] treatment by Covenant Healthcare during the period from September 17, 2002,

---

[5]*R. at 105-106, 108-111.*

to August 16, 2004;[6] a consultative examination by Karen Balkman, M.D., on March 28, 2003;[7] and

a consultative examination by Carl Adams, Ph.D., on April 17, 2003.[8]  Where relevant, Plaintiff's

medical records are discussed in more detail below.

## IV.  Discussion/Analysis

Plaintiff contends that the ALJ erred at step four of the sequential evaluation process.

Specifically, Plaintiff asserts that the ALJ erred in finding that Plaintiff had the RFC to perform a full

range of light work and, therefore, could perform her past relevant work as a secretary.  *See*

***Memorandum in Support of Plaintiff's Motion to Reverse Administrative Decision or, in the***

***Alternative, a Remand of this Matter*** (*Doc. 8*); ***Plaintiff's Reply Brief*** (*Doc. 12*).  Additionally,

although the ALJ determined that Plaintiff was not disabled at step four of the sequential evaluation

process and did not proceed to step five, Plaintiff contends that the ALJ erred at step five of the

process by failing to apply the Medical-Vocational Guidelines (hereinafter, the "Grids") and failing

to obtain the testimony of a vocational expert.  *See id.*  Plaintiff also contends that the Court cannot

properly review this case because portions of the administrative hearing transcript are inaudible.  *See*

---

[6]*R. at 153-182.*  The Court notes that the medical records from Covenant Healthcare were submitted by Plaintiff's attorney to the Appeals Council with Plaintiff's request for review in September of 2004, after the administrative hearing and after issuance of the ALJ's decision. (*R. at 152.*)  The *Record* shows that the Appeals Council received these medical records and made them part of the record, thereby implicitly determining that they qualified as new and material evidence, and considered them in its evaluation of the entire record to determine whether to review Plaintiff's case.  (*R. at 7, 10.*)  *See Martinez v. Barnhart*, No. 04-2259, 2006 W.L. 165010, at *5 (10th Cir. January 24, 2006) (unpublished).  Therefore, these medical records are part of the administrative record considered by this Court in evaluating the ALJ's decision for substantial evidence.  *See O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).

[7]*See R. at 113-118.*

[8]*See R. at 119-125.*

*id.* Plaintiff asks the Court to reverse the decision of the Commissioner or, in the alternative, to remand this case for further proceedings. *See **Motion to Reverse Administrative Decision or, in the Alternative, a Remand of Said Decision** (Doc. 7).* Defendant argues that the decision of the ALJ should be affirmed because he applied the correct legal standards and correctly determined that Plaintiff is not disabled based on substantial evidence. *See **Defendants' Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision** (Doc. 9).*

## A.  Assessment of Plaintiff's RFC

Plaintiff contends that the ALJ erred in finding that Plaintiff had the RFC to perform a full range of light work and, therefore, could perform her past relevant work as a secretary.[9]  In support of this contention, Plaintiff argues that: (1) the ALJ failed to consider the combined impact of Plaintiff's impairments, consisting of fibromyalgia, osteoarthritis, panic attacks, depression and chronic fatigue, in determining her RFC; (2) the medical evidence does not support the ALJ's conclusion that Plaintiff has the RFC to perform light work and there is not substantial evidence to support this conclusion; (3) the ALJ improperly discounted the opinions of Plaintiff's treating physicians and failed to give their opinions controlling weight in determining her RFC; and (4) the ALJ improperly concluded that Plaintiff's subjective complaints were not credible.

### 1.  Failure to Consider Combined Impact of Plaintiff's Impairments

At step four of the sequential evaluation process, the relevant analysis is whether a claimant can return to his or her past relevant work.  This is a three-part analysis: first, the ALJ must evaluate the claimant's physical and mental RFC; second, the ALJ must determine the physical and mental demands of the claimant's past relevant work; and third, the ALJ must determine whether the claimant has the ability to meet the job demands of his or her past relevant work despite the limitations associated with his or her RFC.  *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  In assessing a claimant's RFC in the first part of the analysis, the ALJ must consider

_____

[9]As the ALJ noted in his decision (*R. at 19*), the job of secretary is generally performed as sedentary work.  *See* Dictionary of Occupational Titles, 4th ed., Revised 1991, DICOT 201.362-030. Under the Social Security regulations, a claimant who can do light work can also do sedentary work, unless he or she has additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time.  *See* 20 C.F.R. § 404.1567(b).

all of the claimant's medically determinable impairments of which he is aware,[10] including those which are not severe.  *See* 20 C.F.R. §§ 404.1545(a)(2) and 404.1545(e).  In this case, Plaintiff asserts that the ALJ erred in the first part of the analysis by failing to consider the combined impact of all of her impairments, consisting of fibromyalgia, osteoarthritis, panic attacks, depression and chronic fatigue, in determining her RFC.  The Court disagrees.  A review of the ALJ's decision and the *Record* shows that the ALJ considered all of Plaintiff's medically determinable impairments in assessing her RFC, in accordance with 20 C.F.R. §§ 404.1545(a)(2) and 404.1545(e).

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the medically determinable impairment of fibromyalgia, which was a severe impairment based on the requirements of the Social Security regulations, and that she also had dysthemic and somatoform disorders which were not severe impairments.  (*R. at 19.*)  The *Record* shows that the ALJ considered the combined effects of these impairments in assessing Plaintiff's RFC.  With regard to Plaintiff's fibromyalgia, the ALJ's decision shows that he reviewed the medical and non-medical evidence of Plaintiff's condition and concluded that Plaintiff was limited to some degree by her fibromyalgia but that the record did not support limitations to the degree she alleged because her subjective complaints were out of proportion to the objective evidence and were not supported by the record as a whole.  (*R. at 17, 18.*)[11]   With regard to Plaintiff's psychological disorders, the ALJ's decision shows that

---

[10]An impairment " must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . [and] must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."  20 C.F.R. § 404.1508.

[11]In reaching his conclusion that Plaintiff was limited to some degree by her fibromyalgia, the ALJ relied, in part, on Dr. Balkman's findings that Plaintiff had no limitations in sitting, standing or walking and that she could lift up to twenty pounds on an occasional basis.  (*R. at 17, 18.*)  These findings by Dr. Balkman are in the *Record*  at 115 and 117-118.

he reviewed the evidence of her mental condition, including her allegations of panic attacks and depression, and concluded that she had dysthemic and somatoform disorders.  (*R. at 17, 19.*)[12] However, because the ALJ found that Plaintiff showed no more than a minimal limitation in her ability to perform mental work-related activities, he concluded that there was no evidence that she suffered from a severe mental impairment (*R. at 17.*)

The ALJ did not find that Plaintiff had medically determinable impairments of osteoarthritis and chronic fatigue at step two of the sequential evaluation process.  Therefore, he did not consider these conditions in his assessment of Plaintiff's RFC at step four.  As discussed below, these conclusions are consistent with, and supported by, the *Record*.  A step two determination is governed by the Commissioner's severity regulations at 20 C.F.R. § 404. 1520(c), and is based exclusively on medical factors. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  At this step, a claimant must do the following:

> A claimant 'must provide medical evidence that [he had] an impairment and  how severe it [was] during the time [he says he is] disabled.'  20 C.F.R. § 404.1512(b). Medical evidence consists of signs, symptoms and laboratory findings. *Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988).  The evidence must come from 'acceptable medical sources' including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a).  A claimant's statements regarding the severity of an impairment are not sufficient. *Bernal*, 851 F.2d at 300.

*Flint v. Sullivan*, 743 F.Supp. 777, 782 (D. Kan. 1990), *aff'd.* 951 F.2d 264 (10th Cir. 1991) (quotations and brackets in original).  Contrary to Plaintiff's claims, the medical evidence does not support her contention that she suffers from impairments of osteoarthritis and chronic fatigue.  There

---

[12]The ALJ's conclusion that Plaintiff suffered from dysthemic and somatoform disorders, relied, in large part, on Dr. Adams' diagnoses that Plaintiff suffered from these disorders. Dr. Adams' diagnoses are in the *Record* at 124.

are no objective medical findings of these impairments.  Therefore, there was no need for the ALJ to consider these impairments in his RFC assessment.

The medical evidence that Plaintiff suffers from osteoarthritis is slight.  A medical record of her visit to treating physician Dr. Raes on November 5, 2001, indicates that he discussed osteoarthritis with her and contains the note "OA-hands," but the record does not indicate whether this was his diagnosis.  (*R. at 105.*)  Arthritis is not mentioned in Dr. Raes' other treatment notes for Plaintiff's visits on May 19, 1998, June 23, 1998, July 29, 1998, March 23, 1999, February 15, 2000, April 23, 2001 and November 5, 2001. (*R. at 105-106, 108, 109-111.*)  Dr. Gilbreth, a treating physician with Covenant Healthcare, noted that Plaintiff reported subjective complaints of arthritis in her hands and knees on September 17, 2002, but she made no diagnosis of that condition. (*R. at 175-177.*)  On September 23, 2003, Dr. Gilbreth noted that Plaintiff reported that Dr. Raes told her that she had some arthritis in her hands, feet, hips and knees, and Dr. Gilbreth listed osteoarthritis in her assessment of Plaintiff (*R. at 167*); however, there is no clear indication that Dr. Gilbreth made a diagnosis of arthritis.  The notes of Plaintiff's other visits to Dr. Gilbreth on October 1, 2002, January 22, 2003, February 12, 2003, October 27, 2003, and August 13, 2004, contain no reference to, or diagnosis of, arthritis.  (*R. at 155, 159-160, 171-173.*)  A document in the medical records with the title "Adult Summary Sheet" includes "osteoarthritis" in a list of diagnoses for Plaintiff; however, the document is not dated and has no signature by a healthcare provider.  (*R. at 178.*)  Dr. Balkman, a consulting physician who conducted a physical examination of Plaintiff on March 28, 2003, found no evidence of acute arthritis or joint swelling.  (*R. at 115.*)  The Court finds that the foregoing medical evidence does not establish that Plaintiff suffered from the impairment of osteoarthritis.

11

With regard to Plaintiff's alleged impairment of chronic fatigue, there is no medical evidence in the *Record* that Plaintiff suffered from chronic fatigue.  The medical records indicate repeated complaints of fatigue by Plaintiff, but the ALJ's decision shows that he considered Plaintiff's complaints of fatigue, as they related to her impairment of fibromyalgia, and took these complaints into account in assessing Plaintiff's RFC.  In his decision, the ALJ specifically noted Dr. Balkman's conclusion that Plaintiff had a history of fibromyalgia based on subjective symptoms of fatigue and muscle tenderness.  (*R. at 17.*)[13]

Based on the foregoing analysis, the Court concludes that the medical evidence does not support Plaintiff's contention that she suffered from the impairments of osteoarthritis and chronic fatigue and there is not substantial evidence in the *Record* that Plaintiff suffered from these impairments.  Therefore, there was no need for the ALJ to consider the effect of these conditions in his assessment of Plaintiff's RFC.

**2.  Lack of Medical Evidence and Substantial Evidence to Support RFC Determination**

Plaintiff contends that the medical evidence does not support the ALJ's determination that Plaintiff has the RFC to perform light work and that there is not substantial evidence in the *Record* to support this determination.  Having meticulously reviewed the *Record*, the Court finds that the medical evidence and substantial evidence support the ALJ's determination that Plaintiff can perform a full range of light work given her impairments.

The ALJ found that Plaintiff had the RFC to perform "the full range of light work activity." (*R. at 19.*)  As explained above, light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and, "[e]ven though the weight

---

[13]Dr. Balkman's conclusion is in the *Record* at 115.

lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).  To be considered capable of performing a full range of light work, a claimant "must have the ability to do substantially all of these activities."  *Id.*  The full range of light work also requires standing or walking, off and on, for a total of approximately six hours in an eight hour workday, with intermittent sitting during the remaining time.[14]  The lifting requirement for most light work can be accomplished with occasional stooping, and many unskilled, light jobs "generally do not require use of the fingers for fine activities to the extent required in much sedentary work."[15]

The *Record* includes the following medical evidence.  Dr. Raes saw Plaintiff on May 19, 1998, June 23, 1998, July 29, 1998, March 23, 1999, February 15, 2000, April 23, 2001, and November 5, 2001.  (*R. at 105-106, 108, 109-111.*)  His records indicate a primary diagnosis of fibromyalgia which he treated with Elavil.  (*R. at 105-106, 108-109, 111.*)  His records document subjective complaints of joint and muscle pain by Plaintiff, positive trigger points indicative of fibromyalgia, depression, hormonal problems and fatigue.  (*R. at 105, 108-111.*)  During the course of his treatment, Dr. Raes indicated that Plaintiff experienced some improvement in her symptoms.  (*R. at 106, 110.*)  Dr. Raes noted no limitations on Plaintiff's ability to perform the requirements of light work or other work.

Dr. Gilbreth, of Covenant Healthcare, saw Plaintiff on September 17, 2002, October 1, 2002, January 22, 2003, February 12, 2003, September 23, 2003, October 27, 2003, and August 13, 2004. (*R. at 155-156, 159-160, 163-168, 171-173, 175-177.*)  Dr. Gilbreth's records document subjective

---

[14]*See* Social Security Ruling 83-10, 1983 WL 31251 (1983) at *6.

[15]*Id.*

complaints by Plaintiff which included muscle and joint aches, tight muscles, fatigue, stress, anxiety, numbness in her hands and feet, headaches, difficulty sleeping, panic attacks, arthritis and irritable bowel. (*R. at 155-156, 159, 167, 171-173, 175.*)   Dr. Gilbreth noted no limitations on Plaintiff's ability to perform the requirements of light work or other work.

Plaintiff was examined by Dr. Balkman on March 28, 2003, who noted complaints by Plaintiff of pain in her hands and knees, night vision difficulties and floaters in her eyes, sleep difficulties relieved with the use of Elavil, and symptoms of irritable bowel syndrome. (*R. at 114.*) Dr. Balkman gave Plaintiff a physical examination and noted that Plaintiff's motor strength appeared to be "good plus in all major muscle groups" with the exception of her grip strength which was measured at 12 kilograms on the right and 10 on the left "with equivocal full effort." (*R. at 115.*) Dr. Balkman also noted that Plaintiff's range of motion was "all within functional limits," which included "flexing forward fully to touch her toes and returning to an upright position without any difficulties." *Id.* Dr. Balkman noted that Plaintiff could "easily walk on her toes as well as the heels without deficits," and, with regard to her extremities, that they were "without clubbing, cyanosis or edema," that "[i]n her hands, there is no muscle atrophy and no muscle wasting," that there is "[n]o increased warmth over the joints," and that there were "[n]o noted symptoms of acute arthritis or joint swelling." *Id.* Dr. Balkman noted that Plaintiff reported that she had not had any recent symptoms of panic attacks or anxiety disorder, and that she had been able to complete all of her activities of daily living at home. *Id.* Dr. Balkman noted Plaintiff's report that fatigue and tenderness in multiple muscle groups did not allow her to continue with any full time work, but Dr. Balkman concluded, based on her examination and review of Plaintiff's medical records, that Plaintiff had "no muscle atrophy and no muscle wasting," "[n]o neurological deficits," and "[n]o limits in sitting, standing, walking, or use of

14

her hands for functional activities." *Id.* Dr. Balkman completed a "Medical Source Statement of Ability to do Work-Related Activities" form for Plaintiff, in which she found that Plaintiff could lift and carry up to twenty pounds occasionally in an eight hour day, and that she had no limitation on walking, standing or sitting, overhead reaching, the handling of objects, traveling, speaking, hearing or fine manipulation with her hands and fingers. (*R. at 117-118.*)

Plaintiff was examined by Dr. Adams on April 17, 2003, who noted complaints of fibromyalgia, panic and anxiety disorder, osteoarthritis, paranoia, irritable bowel syndrome, nausea, memory problems, numbness in her hands and feet, muscle tightness and pain, asthma, chronic fatigue syndrome, sleep disorder, night blindness and floaters in her eyes. (*R. at 122, 124.*) Dr. Adams noted that Plaintiff "expressed herself well" and "was able to attend and concentrate adequately." (*R. at 122.*) He noted that she showed "no signs of depression" and that "none of her daily activities indicate depressive disorder." *Id.* He noted that she was "oriented to time, place and person," that her "[l]ong and short-term recall are in the average range," that her "[i]nsight was grossly intact with fair psychological insight," that her "[p]erceptions were free of distortions and there is no history of auditory and visual hallucinations," that her "[j]udgment is good for managing her life and making decisions," that she was not paranoid, delusional or suicidal, and that her "[t]hought content was within normal limits with no indications of a formal thought disorder." *Id.* Dr. Adams noted that Plaintiff had not had any outpatient or inpatient therapy, and that she said that she "never really thought about getting into counseling." (*R. at 124.*) He noted that "she demonstrated virtually no pain behavior" during her interview, and that her "[s]itting tolerance was within normal limits" and that her "gait was absent any pain." *Id.* He noted that Plaintiff "did not present with any signs of fatigue, anxiety and panic, or depression" during her interview. *Id.* He also noted that Plaintiff kept

busy during the day, went shopping and ran errands according to her daily activity questionnaire, brought herself to the appointment, and cooked complete meals about four times a week. *Id.* Dr. Adams diagnosed Plaintiff with dysthymic, somatization and narcissistic personality disorders and assigned her a Global Assessment of Functioning (hereinafter, "GAF") score of 70 to 80.[16] (*R. at 124-125.*) Dr. Adams completed a "Psychiatric - Psychological Source Statement of Ability To Do Work-Related Activities" form for Plaintiff in which he found that she was not limited in understanding and remembering instructions, sustained concentration and task persistence and adaptation, or the ability to interact with coworkers and supervisors, and that she was only mildly limited in the ability to interact with the public. (*R. at 119-121.*)

On April 25, 2003, a state agency reviewing physician completed a Psychiatric Review Technique form for Plaintiff and concluded that she suffered from dysthymia and personality and somatoform disorders which were not severe impairments and imposed only mild limitations on her ability to engage in the activities of daily living, maintain social functioning and maintain concentration, persistence or pace. (*R. at 126-139.*) On the same date, another state agency reviewing physician completed a "Physical Residual Functional Capacity Assessment" (hereinafter, "PRFCA") (*R. at 140-147*) form for Plaintiff and concluded that she could occasionally lift and/or carry twenty pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for about six hours in an eight-hour work day, sit (with normal breaks) for about

---

[16]A GAF score "is for reporting the clinician's judgment of [an] individual's overall level of functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision, 2000, at 32. A GAF score of 70 - 80 indicates the following: "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors" and "no more than slight impairment in social, occupational, or school functioning." *Id.* at 34.

six hours in an eight-hour work day, and push and/or pull without limitation except for her weight limitation on lifting and/or carrying. *(R. at 141.)* The physician completing the PRFCA form for Plaintiff also concluded that Plaintiff had no postural, manipulative, visual or communicative limitations, and no environmental limitations except avoidance of concentrated exposures to extreme cold, fumes, odors, dusts, gases and poor ventilation. *(R. at 142-144.)*

The ALJ's assessment of Plaintiff's RFC for light work is also supported by non-medical evidence in the *Record*. After her alleged onset of disability on August 1, 1998, Plaintiff reported working as a hay-baler, an office worker and a secretary. *(R. at 61, 70-71.)* Although this work was not sufficient to constitute substantial gainful activity, it is evidence of her ability to perform at least some work activity after her alleged onset date. Plaintiff's daily activities questionnaire indicated that she shopped and ran errands once or twice a week, cooked complete meals approximately four times a week, did some hand-watering in the yard, did dishes and laundry with resting periods in between and drove during the day. *(R. at 92-94.)* Plaintiff also reported on her daily activities questionnaire that she was able to climb a flight of stairs, did not use an assistive device to walk, did not have problems grooming, dressing or feeding herself, and could type and use a computer keyboard. *(R. at 99-100.)* During the administrative hearing, Plaintiff testified that she drove approximately forty miles per week. *(R. at 196.)* She also testified that she did dishes, cooked and grew flowers. *(R. at 198.)* During her interview with Dr. Adams, he noted that she brought herself to the appointment. *(R. at 124.)*

The foregoing evidence supports the ALJ's determination that Plaintiff can perform a full range of light work given her impairments. Moreover, it is apparent from the ALJ's decision that he

considered all of the evidence in the *Record* at the time of his decision in assessing Plaintiff's RFC. The Covenant Healthcare medical records do not undercut the ALJ's assessment of Plaintiff's RFC.

### 3.   Improper Consideration of Opinions of Plaintiff's Treating Physicians

Plaintiff argues that the ALJ improperly discounted the opinions of Plaintiff's treating physicians and failed to give their opinions controlling weight in determining her RFC.  Yet, Plaintiff fails to identify which physician opinions were improperly discounted and fails to explain why the opinions should have been given controlling weight.[17]   Plaintiff is correct that an ALJ must give controlling weight to a treating physician's opinion, if the opinion is well-supported and not inconsistent with other substantial evidence in the record.  *See White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2002).   However, the Court need not address this argument, which is insufficiently developed, and guess at Plaintiff's claim.   *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (court would not speculate where claimant failed to identify which treating physician she felt was ignored by the ALJ).  Plaintiff's claim regarding the ALJ's consideration of her treating physicians' opinions is simply too vague for the Court to analyze and decide.  The ALJ's decision shows that he reviewed the available medical records of Plaintiff's treating physicians and took their opinions into account in making his disability determination.

### 4.   Improper Credibility Assessment

Plaintiff contends that the ALJ improperly concluded that Plaintiff's subjective complaints were not credible.  This conclusion is reflected in the ALJ's finding that Plaintiff's allegations regarding her limitations were not totally credible for the reasons set forth in his decision.  (*R. at 19.*)

---

[17]*See **Memorandum in Support of Plaintiff's Motion to Reverse Administrative Decision or, in the Alternative, a Remand of this Matter** (Doc. 8) at 11; **Plaintiff's Reply Brief** (Doc. 12) at 1-3.*

The ALJ's decision shows that he considered Plaintiff's subjective complaints of fatigue, muscle and joint pain, and numbness in her feet and hands, but concluded, based on other evidence in the *Record*, that her subjective complaints were out of proportion to the objective evidence and were not supported by the record as a whole.  (*R. at 18.*)  In reaching this decision, the ALJ found that although Plaintiff suffered from fibromyalgia, the record did not support limitations to the degree she alleged.  *Id.*

"Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned if supported by substantial evidence.  *Diaz v. Sec'y. of Health and Human Services*, 898 F.2d 774, 777 (10th Cir. 1990).   However, such deference is not absolute.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).  "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).   In determining the credibility of complaints about pain, an ALJ may consider factors such as the nature of daily activities, levels of medication and their effectiveness, the extensiveness of attempts to obtain relief and the frequency of medical contacts, subjective measures of credibility that are peculiarly within the judgment of the ALJ, and the consistency or compatability of nonmedical testimony with objective medical evidence.  *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  If an ALJ sets forth the specific evidence he relies on in evaluating a claimant's credibility, he does not have to recite the evidence factor-by-factor.  *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002).

In this case, the ALJ closely and affirmative linked his credibility findings to substantial evidence in the *Record* and discussed the evidence that he relied on in evaluating Plaintiff's credibility.  In support of his credibility determination, the ALJ noted evidence in the *Record* that, despite her

subjective complaints, Plaintiff went shopping once or twice a week, cooked meals, cared for her own personal needs without assistance, was able to drive up to forty hours per week, and cleaned the house with her husband.  (*R. at 18.*)  The ALJ also noted Dr. Balkman's findings that Plaintiff had no sensory deficits and little, if any, restriction on her range of motion, that she had no evidence of swelling in her joints or muscle wasting, that she put forth less than full effort on her strength testing, and that there were no x-rays or imaging studies to support a diagnosis of arthritis.  *Id.*  The ALJ also noted Dr. Adams' finding that Plaintiff showed no signs of any pain behavior or fatigue during her interview with him.  *Id.*  The Court finds that the ALJ properly analyzed the evidence and outlined the reasons for his evaluation of Plaintiff's credibility.  The reasons given by the ALJ for his findings regarding Plaintiff's credibility comply with applicable law and are supported by substantial evidence in the *Record.*

## B.  Failure to Apply Grids

Although the ALJ determined that Plaintiff was not disabled at step four of the sequential evaluation process, Plaintiff contends that the ALJ erred at step five of the process by failing to apply the Grids to determine that she was disabled.  This argument has no merit.  The Social Security regulations provide that if a claimant is found disabled or not disabled at any step in the sequential evaluation process, the process stops there and additional steps in the process are not considered.  *See* 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.").[18]  In this case, the ALJ found that Plaintiff was not disabled at step four of the process and his decision is supported by

---

[18]*See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (if Commissioner determines that claimant is not disabled at step four, further evaluation is unnecessary).

substantial evidence and in accordance with applicable law.  Therefore, the ALJ was not required to go on to step five and apply the Grids to determine if Plaintiff was disabled.

### C.  Failure to Obtain Testimony of a Vocational Expert

Plaintiff asserts that the ALJ erred in failing to obtain the testimony of a vocational expert to assess her RFC.  The ALJ was not required to use a vocational expert to determine whether Plaintiff could return to her past relevant work at step four of the sequential evaluation process.  *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994). An RFC assessment must be based on all relevant evidence in the record and the record can be developed by evidence other than the testimony of a vocational expert such as medical history, medical sources, reports of daily activities, lay evidence, recorded observations, effects of symptoms and testimony during the Administrative history.  *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) at \*4-\*5.  Thus, the ALJ's failure to use a vocational expert at step four was not legal error.[19]

### D.  Inaudible Portions of Administrative Hearing Transcript

Plaintiff contends that this case cannot be properly reviewed by this Court because portions of the administrative hearing transcript are inaudible.  The transcript of the administrative hearing contains sections where the testimony at the hearing was inaudible and not transcribed.  Plaintiff argues that these inaudible portions of the transcript make proper review of this case impossible. Specifically, Plaintiff points to inaudible portions of the transcript containing her testimony about her

---

[19]The cases cited by Plaintiff in her response in support of this argument are not on point. Both *Taylor v. Callahan*, 969 F.Supp. 664 (D. Kan. 1997) and *Martinez v. Apfel*, 17 F.Supp.2d 1188 (D. Colo. 1998) involved disability determinations at step five of the sequential evaluation process. Neither case held that a vocational expert's testimony is required at step four of the process.

limitations on sitting, standing and walking.[20]  Plaintiff contends that without this testimony, there is

no evidence in the *Record* to determine how long she can sit, stand and walk.  The Court does not

agree.

Although the Court could find no Tenth Circuit law on point, other courts have held that

when missing portions of a transcript prevent judicial review, the court should remand the case for

a rehearing.  *See, e.g., Koning v. Bowen*, 675 F.Supp. 452, 457-458 (N.D. Ind. 1987); *but see

Ward v. Heckler*, 786 F.2d 844, 848 (8th Cir. 1986) (holding that a transcript with only occasional

gaps of "a few words at a time" or "one and two times per page" involving small portions of

testimony did not preclude fair review).

This Court has reviewed the transcript of Plaintiff's administrative hearing (*R. at 183-199*),

along with the entire *Record*.  While there are inaudible sections in the hearing transcript, the Court

does not find these sections to be so numerous as to prevent proper judicial review.  Additionally,

most of the inaudible sections concern subjects covered elsewhere in the record, including evidence

of Plaintiff's physical limitations.[21]  The *Record* contains substantial evidence to support the ALJ's

---

[20]The relevant testimony cited by Plaintiff is as follows:

A      Well, I can't actually sit a long period of time.  It's hard to get up and walk.
Q      In terms of time, how long would you consider a long time?
A      [INAUDIBLE]
Q      How about standing?  [INAUDIBLE]
A      Yes, about the same as the sitting.
Q.     How about walking?
A.     Yes.  I can't walk a long time - - like as far as walking or exercising, I can't do that.

(*R. at 194.*)

[21]*See, e.g.,* Dr. Balkman's report (*R. at 113-118*), and her determination that Plaintiff's ability
to sit, stand and walk were not limited (*R. at 118*); Dr. Adams' notations in his report that Plaintiff

decision.  Accordingly, the Court does not find that the condition of the administrative hearing transcript warrants remand of this case for a rehearing.

## V.  Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the *Record* as a whole and comports with relevant legal standards.  Accordingly, the Court will **AFFIRM** the decision of the Commissioner and **DENY** Plaintiff's motion.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's ***Motion to Reverse Administrative Decision or, in the Alternative, a Remand of Said Decision*** (*Doc. 7*) is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes A. Martínez*
_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**

---

"demonstrated virtually no pain behavior" during her interview, had a "sitting tolerance . . . within normal limits," and a "gait . . . absent any pain" (*R. at 124*); and Plaintiff's report in her daily activities questionnaire that she could shower, shop and run errands, do chores such as laundry, cook meals, drive, do some house-cleaning and yard work, take care of her personal grooming without assistance, type and use a keyboard, walk to the mail box and back (about 100 feet) although this made her tired and out of breath, and dress herself. (*R. at 92-101*).